**Reversed and Remanded and Opinion and Concurring and Dissenting Opinion filed December 18, 2018.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-17-00667-CV

---

## MARK RODRIGUEZ, VICTOR TREVINO III, AND THOMAS TREVINO, Appellants

### V.

## RICHARD "RICK" GONZALES, Appellee

---

**On Appeal from the 129th District Court
Harris County, Texas
Trial Court Cause No. 2016-87024**

---

# CONCURRING AND DISSENTING OPINION

In this interlocutory appeal involving social-media speech about a candidate, the putative defamers challenge an order denying their motion to dismiss under the Texas Citizens Participation Act. Though the majority correctly determines that the candidate, appellee Richard "Rick" Gonzales did not establish by clear and specific evidence a prima facie case for each essential element of his claims against

appellant Mark Rodriguez, I part ways with the majority in its determination that Gonzales failed to carry this burden as to appellants Victor Trevino III and Thomas Trevino.

## I.    Applicable Legal Standards

If a party moving to dismiss an action under Chapter 27 of the Texas Citizens Participation Act (the "Act") meets its initial burden to show by a preponderance of the evidence that the action is based on, relates to, or is in response to the movant's exercise of the right of free speech, the right to petition, or the right of association, the trial court must dismiss the action unless the party bringing the action establishes "by clear and specific evidence a prima facie case for each essential element of the claim in question."[1]

A "prima facie case" refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted.[2]   A prima facie case reflects the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true.[3]   The phrase "clear and specific" describes the "clarity and detail required to avoid dismissal" and does not impose a burden of proof higher than the burden required at trial.[4]

As to each of his defamation claims, Gonzales must prove that the defendant in question (1) published a false statement of fact to a third party (2) that was defamatory concerning Gonzales (3) while acting with actual malice regarding the

---

[1] Tex. Civ. Prac. & Rem. Code § 27.005 (West, Westlaw through 2017 1st C.S.); *see Youngkin v. Hines*, 546 S.W.3d 675, 679 (Tex. 2018).

[2] *See In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015).

[3] *Id*.

[4] *Id. at 590–91.*

2

truth of the statement.[5]  Gonzales also asserted libel claims.  "A libel is a defamation expressed in written or other graphic form that tends to blacken the memory of the dead or that tends to injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation or to publish the natural defects of anyone and thereby expose the person to public hatred, ridicule, or financial injury."[6]  As to each of Gonzales's libel claims, Gonzales must prove that the defendant in question (1) published in written or graphic form a false statement of fact to a third party (2) that was defamatory concerning Gonzales (3) while acting with actual malice regarding the truth of the statement.[7] The law classifies defamation, and libel, as either per se or per quod.[8]  Defamation per se or libel per se occurs when a statement is so obviously detrimental to the plaintiff's good name that a jury may presume general damages, such as for loss of reputation or for mental anguish.[9] The law typically classifies statements that cause injury to one's office, profession, or occupation as defamatory per se.[10]  Accusing a person in writing of having committed a crime constitutes defamation or libel per se.[11] Defamation per quod is simply defamation that is not actionable per se.[12]

Actual malice in this context does not mean bad motive or ill will but rather

---

[5] *See In re Lipsky*, 460 S.W.3d at 593; *Cruz v. Van Sickle*, 452 S.W.3d 503, 515 (Tex. App.—Dallas 2014, pet. denied).

[6] Tex. Civ. Prac. & Rem. Code § 73.001 (West, Westlaw through 2017 1st C.S.).

[7] *See Hoang v. Nguyen*, 14-14-00942-CV, 2016 WL 4533417, at *2 (Tex. App.—Houston [14th Dist.] Aug. 30, 2016, no pet.) (mem. op.).

[8] *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 624 (Tex. 2018).

[9] *See id*.

[10] *See id*.

[11] *See id*. at 638.

[12] *See id*. at 624.

knowledge of, or reckless disregard for, the falsity of the statement.[13]   Simply stated, the focus centers on the alleged defamer's attitude toward the truth rather than the alleged defamer's attitude toward the person allegedly defamed.[14]

Knowledge of falsehood is a relatively clear standard; "reckless disregard" is much less so.[15] A subjective standard that focuses on the conduct and state of mind of the defendant, "reckless disregard" requires more than negligence.[16]  The record must contain evidence that the defendant in fact entertained serious doubts as to the truth of the publication, evidence the defendant "actually had a "high degree of awareness of . . . [the] probable falsity" of the defamatory statement.[17]  The failure to investigate the facts before speaking as a reasonably prudent person would do, standing alone, is not evidence of a reckless disregard for the truth, but evidence that a failure to investigate was contrary to a speaker's usual practice and motivated by a desire to avoid the truth may demonstrate the reckless disregard required for actual malice.[18]  Although courts must be careful not to place too much reliance on motive and care, a plaintiff may prove the defendant's state of mind through circumstantial evidence, and it cannot be said that evidence concerning motive or care never bears any relation to the actual-malice inquiry.[19]

To disprove actual malice, one may testify about one's own thinking and the reasons for one's actions, and may be able to negate actual malice conclusively.[20]

---

[13] *Greer v. Abraham*, 489 S.W.3d 440, 443 (Tex. 2016).

[14] *See id*. at 444.

[15] *Bentley v. Bunton*, 94 S.W.3d 561, 591 (Tex. 2002).

[16] *Id*.

[17] *See id*.  (footnotes and internal quotations omitted).

[18] *Id*.

[19] *Id*.

[20] *Id*. at 596.

But, one's testimony that one believed what one said does not make the showing conclusive, regardless of all other evidence.[21] The evidence must be viewed in its entirety.[22] A defendant's state of mind can be proved by circumstantial evidence.[23] A lack of care or an injurious motive in making a statement does not alone prove actual malice, but care and motive stand as factors to be considered.[24] An understandable misinterpretation of ambiguous facts does not show actual malice, but inherently improbable assertions and statements made on information that is obviously in doubt may show actual malice.[25] A failure to investigate fully is not evidence of actual malice; a purposeful avoidance of the truth is.[26]

At trial, Gonzales would have to prove malice by clear and convincing evidence.[27] For analysis' sake, we may presume that the clear-and-convincing-evidence standard does not apply in determining a motion to dismiss under the Act.[28]

## II. Did the Gonzales establish by clear and specific evidence a prima facie case for each essential element of his defamation claims against Thomas Trevino?

The majority correctly determines that appellants Victor Trevino III, Thomas Trevino, and Mark Rodriguez (collectively the "Trevino Parties") met their initial burden to show by a preponderance of the evidence that each of

---

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *See Huckabee v. Time Warner Entm't Co.*, 19 S.W.3d 413, 420 (Tex. 2000).

[28] *See id.* at 420–22 (holding that courts do not consider the "clear and convincing evidence" burden of proof in determining whether a fact issue exists precluding summary judgment, even though this burden of proof would apply at trial).

Gonzales's claims is based on, relates to, or is in response to the movant's exercise of the right of free speech, the right to petition, or the right of association. Because the Trevino Parties carried their initial burden under the Act, this court must determine whether Gonzales established by clear and specific evidence a prima facie case for each essential element of his defamation claims against Victor III.[29]

In his live pleading Gonzales complained of a social-media post Thomas Trevino made on Facebook a week before the election. In the post, Thomas Trevino stated:

> "The republican Rick Gonzalez likes to point out everyone[']s criminal records. Here[']s one for you Rick, why don[']t [you] put ur criminal past agains[t] my mom[']s criminal past. My mom has no criminal past/ Record. In my opinion **your violation of non payment of child support** is worse than any felony. What a disgrace. -T #VoteSilviaTrevino"[30][31]

Clear and specific evidence establishes a prima facie case that the "Rick Gonzalez" to which Thomas referred was Gonzales. Gonzales filed an affidavit in which he states, "I always paid child support for my two daughters, Stephanie Lebron and Terra Gonzales. Furthermore, there is no court filing alleging that I failed to pay child support." Clear and specific evidence establishes a prima facie case that Thomas published to a third party a statement of fact in written or graphic form — that Gonzales did not pay child support — and that this statement was false and defamatory per se concerning Gonzales.[32]

The next question is whether clear and specific evidence establishes a prima

---

[29] Tex. Civ. Prac. & Rem. Code § 27.005(c) (West, Westlaw through 2017 1st C.S.); *see Youngkin*, 546 S.W.3d at 679.

[30] *Id*.

[31] Emphasis added

[32] *See Tatum*, 554 S.W.3d at 629–31, 637–38; *In re Lipsky*, 460 S.W.3d at 593.

facie case that Thomas published this statement while acting with actual malice regarding the statement's truth.

In his affidavit Thomas stated he based this post "on information received from Plaintiff Richard Gonzales's daughter, Stephanie Gonzales Lebron, which I believed to be true." Thomas stated that he posted this information on Facebook "to communicate with other voters in [his] community with an interest in the election."

Gonzales filed an affidavit from Stephanie Gonzales Lebron in which she stated that her father "always paid child support until [she] was 18 years old." Lebron states that she knows Thomas from high school and occasionally sees him at social events. She stated: "I have never told Thomas Trevino or anyone else that my father failed to pay child support." She further stated that the subject matter is something she would never discuss with Thomas Trevino.[33]

Thomas contends even if Lebron's testimony contradicts his statement that he relied on information he received from Lebron, he still might prevail on this point. Thomas asserts that *Gonzales v. Hearst Corp.* controls the outcome. In that case, the plaintiff's primary evidence of malice was a direct contradiction between a defendant news journalist's testimony and that of the journalist's alleged source.[34] The *Houston Chronicle*, in a front-page story, incorrectly had named the plaintiff —Officer Ricardo Gonzales of the Houston Police Department — as the police officer involved in a shooting. The story was about another officer — Robert Gonzalez. Ricardo Gonzales sued for defamation. In addressing the contradiction between the journalist (Campbell) and the alleged source, this court

---

[33] *See Tatum*, 554 S.W.3d at 629–31, 637–38; *In re Lipsky*, 460 S.W.3d at 593.

[34] *See Gonzales v. Hearst Corp.*, 930 S.W.2d 275, 283 (Tex. App.—Houston [14th Dist.] 1996, no writ).

explained:

> First, Baker unequivocally denies giving Campbell the name Ricardo Gonzales. Campbell, on the other hand, claimed to have gotten the name Ricardo Gonzales from Baker. We must disregard Campbell's testimony, take Baker's version as true, and conclude that Campbell's alleged source did not give him the erroneous name. Appellant argues that this version of the facts supports the inference that Campbell must have fabricated the name he used in the story. We do not agree that this is a reasonable inference to draw from the evidence before us.[35]

Trevino's discussion of the case downplays evidence showing that the defendant-journalist had a strong reputation for accuracy and had interviewed four other officers in writing the story. But it was upon that evidence that this court concluded that "a juror or judge might reasonably infer from the evidence that Campbell was mistaken about his source, or negligent, but not that he had willfully published false information in his story."[36]

Applying the same analysis, treating Lebron's testimony as true, and disregarding Thomas Trevino's testimony to the extent there is a conflict, yields a different result. Material facts present in *Gonzales v. Hearst Corp* are not present in today's case — proof of a reputation for accuracy and indicia of diligence in investigating.[37] In addition, Thomas testified that the only source of the information on which he based his post was Lebron. And, this court must consider factors not present in *Gonzales v. Hearst Corp.*, such as the putative defamer's motivation in the form of political and familial loyalty.[38]

Under the applicable standard of review, clear and specific evidence establishes a prima facie case that Thomas published to a third party by written or

---

[35] *Id*. at 282.

[36] *Id*. at 282–83.

[37] *Id*.

[38] *See id*.

graphic means a statement that Gonzales did not pay child support while acting with actual malice regarding the statement's truth.[39] Thus, this court should overrule the second issue as to Gonzales's defamation and libel claims against Thomas.

**III.   Did the Trevino Parties establish by clear and specific evidence a prima facie case for each essential element of Gonzales's defamation claims against Victor Trevino III?**

Because Victor Trevino III met his initial burden to show by a preponderance of the evidence that each of Gonzales's claims is based on, relates to, or is in response to the movant's exercise of the right of free speech, the right to petition, or the right of association, this court must determine whether Gonzales established by clear and specific evidence a prima facie case for each essential element of Gonzales's defamation claims against Victor III.[40]

At trial, Gonzales would have to prove malice by clear and convincing evidence.[41] As noted, this court may presume, without deciding, that the clear-and-convincing-evidence standard does not apply in determining a motion to dismiss under the Act.[42]

For each alleged defamatory statement, this court must determine whether the trial court erred in concluding that Gonzales established by clear and specific evidence a prima facie case for the elements in question.

---

[39] *See Robert B. James, DDS, Inc. v. Elkins*, 553 S.W.3d 596, 612 (Tex. App.—San Antonio 2018, pet. filed); *Warner Bros. Entertainment, Inc. v. Jones*, 538 S.W.3d 781, 804–12 (Tex. App.—Austin 2017, pet. filed).

[40] Tex. Civ. Prac. & Rem. Code § 27.005(c) (West, Westlaw through 2017 1st C.S.); *see Youngkin*, 546 S.W.3d at 679.

[41] *See Huckabee*, 19 S.W.3d at 420.

[42] *See id*. at 420–22 (holding that courts do not consider the "clear and convincing evidence" burden of proof in determining whether a fact issue exists precluding summary judgment, even though this burden of proof would apply at trial).

In his live pleading, Gonzales asserted defamation claims against Victor Trevino III based on statements Trevino III made in social-media posts on "Nextdoor Eastwood" a week before the election. In a post dated "Nov 2", Victor Trevino III stated:

> Mr. O'Sullivan, . . .[A]nytime you attempt to say something negative about my parents, I will continue to remind Nextdoor readers of the FACTS about your Republican candidate.
>
> FACTS such as your Republican candidate Is the ONLY candidate that has a CONVICTION of a Criminal Offense on his record, FACTS such as he was ARRESTED, CHARGED, and CONVICTED of Public intoxication, FACTS such as your Republican candidate is the only candidate which his previous girlfriend/ex wife filed on him while with HPD for Domestic Violence. Which now even more women are coming forward to verify on Facebook. And of course the FACT that your Republican candidate is currently at the center of a Criminal Investigation by HPD for storing and distributing stolen merchandise. A crime in which even your Republican candidate has acknowledged he has been questioned for regarding him admitting on his Facebook that he stored and distributed stolen merchandise.
>
> Regarding proof you asked for recently on another post, your Republican candidate has made countless baseless allegations against my parents, all of which they have emphatically denied, which you and your Republican candidate have never provided any proof but I don't have to show proof when your Republican candidate hasn't even denied the validity of any of my comments or allegations I have made against him because he knows they are TRUE, and more importantly he knows I have the documentation to prove it. if he ever thought about denying them. . .

In his lawsuit Gonzales complains of Trevino's statements in the post that (1) "your Republican candidate is currently at the center of a Criminal Investigation by HPD for storing and distributing stolen merchandise"; (2) "[a] crime in which even your Republican candidate has acknowledged he has been questioned for regarding him admitting on his Facebook that he stored and distributed stolen merchandise"; and (3) "your Republican candidate is the only candidate which his previous girlfriend/ex wife filed on him while with HPD for

10

Domestic Violence."

## A. Statement that appellant was at the center of a criminal investigation for storing and distributing stolen merchandise

As to the first statement, it may be presumed that Trevino III referred to Gonzales and stated that he was then "at the center of a Criminal Investigation by HPD for storing and distributing stolen merchandise." In the context of this suit, the discrete statement in Victor's post that Gonzales was "at the center" of such a criminal investigation is not actionable on its own as an objectively verifiable fact.[43]

## B. Statement about Gonzales admitting that he stored and distributed stolen merchandise

As to Trevino III's statement that "[a] crime [storing and distributing stolen merchandise] in which even your Republican candidate has acknowledged he has been questioned for regarding him admitting on his Facebook that he stored and distributed stolen merchandise." The record contains clear and specific evidence establishing a prima facie case that the "Republican candidate" to which Trevino III referred was Gonzales. For the purpose of the rest of the analysis, this court may presume that Gonzales is the referenced candidate.

In this statement, Trevino III says that Gonzales has acknowledged he has been questioned about storing and distributing stolen merchandise. Trevino also states that Gonzales has acknowledged he has been questioned about Gonzales admitting on his Facebook page that he stored and distributed stolen merchandise. Trevino does not expressly say that Gonzales admitted on his Facebook page that he stored and distributed stolen merchandise. Nonetheless, Trevino III's post

---

[43] *See Neely v. Wilson*, 418 S.W.3d 52, 62 (Tex. 2013) (noting that statements not verifiable as false cannot form the basis of a defamation claim).

reasonably can be understood as stating that Gonzales admitted on his Facebook page that he stored and distributed stolen merchandise.[44] The implication that Gonzales had made such an admission is among the implications that an objectively reasonable reader would draw from Trevino III's post.[45]

The implied statement that Gonzales admitted to the criminal conduct of storing and distributing stolen merchandise is defamatory per se concerning Gonzales.[46] Gonzales filed an affidavit in response to the motion to dismiss in which he testifies that he did not make such an admission: "nor did I ever admit . . . to storing and distributing stolen merchandise." The record contains clear and specific evidence establishing a prima facie case that Trevino III published to a third party an implied statement of fact — that Gonzales admitted to the criminal conduct of storing and distributing stolen merchandise — and that this statement was false and defamatory concerning Gonzales.[47]

The next issue is whether clear and specific evidence establishes a prima facie case that Trevino III published this statement while acting with actual malice regarding the statement's truth. Trevino III filed an affidavit in which he states that he based his post "on information received from other residents of East End, Houston, Texas, as well as Facebook posts by Stella Cevallos-Vinson and Plaintiff Richard Gonzales, which I believed to be true." Trevino III states that he posted this information on "Nextdoor Eastwood, a neighborhood social network, to communicate with other voters in [his] neighborhood." Trevino III does not name

---

[44] *See Tatum*, 554 S.W.3d at 629–31.

[45] *See id.* at 631, 637.

[46] *See id.* at 637–38.

[47] *See In re Lipsky*, 460 S.W.3d at 593; *Tatum*, 554 S.W.3d at 629–31, 637–38.

any resident, or refer to or attach as an exhibit any specific Facebook post on which he allegedly based the post in question.

Attached to the reporter's record from the July 24, 2017 trial-court hearing are twenty-one pages of documents that apparently were part of the Trevino Parties' responses to Gonzales's discovery requests. The clerk's record on appeal does not contain these documents, and the record indicates that they were not filed with the trial court clerk. No party offered these document into evidence at any hearing, nor did the trial court admit any of these documents into evidence at any hearing. At the hearing on June 29, 2017, the trial court considered these documents as part of the evidence pertinent to the Trevino Parties' motion to dismiss. On appeal, both Gonzales and the Trevino Parties cite these documents in support of their arguments. No party lodges any complaints that the trial court should not have considered these arguments. Nor does any party urge this court not to consider these documents. No party argues that these documents were not part of any pleading or affidavit and that section 27.006(b) requires this court to consider only pleadings and affidavits. No party asserts these documents were not authenticated or voices any objection to the form of these documents.[48] This court may presume, without deciding, that under section 27.006(b) courts may consider only pleadings and affidavits in determining whether to grant a motion to dismiss under the Act. Even under this presumption, the parties have waived each of the foregoing complaints, and this court may consider these documents as part of the evidence in determining whether the trial court erred in denying the motion to dismiss.[49]

---

[48] *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.006(b) (West, Westlaw through 2017 1st C.S.).

[49] *See Washington DC Party Shuttle, LLC v. IGuide Tours*, 406 S.W.3d 723, 744 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (en banc) (noting that an objection to a defect in the form of evidence is preserved only when the litigant objects and obtains a ruling from the trial court);

Among these documents were four emails containing phone images of Facebook posts by Gonzales, a photograph of a document apparently from the Houston Police Department stating "MAJOR OFFENDERS DIVISION WAS ASSIGNED BY THE MAJOR OFFICE TO INVESTIGATE A POSSIBLE CASE OF CITY PROPERTY THEFT THAT WAS POSSIBLY MISAPPROPRIATED"[50]; an email containing an image of a Facebook post by Stella Cevallos-Vinson responding to a post by "Richard Rick Gonzales" relating to his appearance on Telemundo; a copy of a Facebook timeline string, including posts by Stella Cevallos-Vinson, and other supporters of the two candidates ("Facebook Timeline String"); an image of an employment application of Richard James Gonzales to the Civil Service Department of the City of Houston dated "9-28-83."

Gonzales's Facebook posts include statements and photos indicating that Gonzales was assisting in the delivery of backpacks, and contain photos of Gonzales next to a car full of backpacks. Other photos show other individuals working a room containing stacks of backpacks, and a truck loaded with backpacks. The posts contain the following messages:

> Helping Gloria Alvarez Rodriguez deliver hundreds of school backpacks to our future leaders.

Another posts states:

> People are pulling up and I keep loading their vehicles with backpacks. Just kidding. These are being delivered. I did give some to

*Kennedy Con, Inc. v. Foreman*, 316 S.W.3d 129, 134 & n. 3 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (holding that party waived any objection to trial court receiving oral testimony at the summary-judgment hearing); *Tex. Dep't of Public Safety v. Monroe*, 983 S.W.2d 52, 56 (Tex. App.—Houston [14th Dist.] 1998, no pet.) (treating evidence as admitted even though record did not show that the evidence was admitted because the trial court and the parties treated the evidence as if it were admitted).

[50] This document does not contain a reference to Gonzales.

several who pulled up. After all it's for the kids, right. Where's my help Gloria?

Another post states:

> The Trevino camp has failed again in their attempt to derail me. During the time we were distributing free backpacks to the children, the Trevino camp pressured Councilmember Karla Cisneros to file a theft report, without any bases or evidence. They even called Channel 2, Ryan Korsgard to make a story out of their false accusation. Ryan Korsgard called me to ask questions. No wrong doing was found or it would have been a news story. The Trevino's are evil people in my opinion and they will do and say anything to win the election The HPD case is closed. HPD knew it was a bogus complaint from the beginning because of the volunteers who gave out the backpacks are outstanding citizens of the community. Every . . . People who know me, know that I am giver not a thief. I understand that campaigns can be damaging, especially when false statements are said. I assure you that my honesty and trustworthiness is well known in our community. Victor Trevino III is a teacher at Stephen F Austin High School and has been making damaging and untruthful statements, however the Principal Steve Gu[e]rrero has done nothing in regard to his actions. I would not allow my children to be in his class. Victor where were you when your dad was stealing thosands [sic] of dollars from the community?

In his post, Gonzales acknowledges an "HPD case" which he states is "closed," commenting that it was a "bogus complaint," and adding that "people who know me, know that I am a giver not a thief." According to Gonzales's post, Karla Cisneros filed a "theft report" apparently indicating that Gonzales was involved in theft. Gonzales also suggests that the "Trevino camp" called reporter Ryan Korsgard and told him false allegations about Gonzales. In the post, Gonzales indicates that the Houston Police Department investigated Gonzales to see if he was involved in theft. Still, nothing in this post or in any of the other evidence shows that Gonzales admitted to storing and distributing stolen merchandise.

15

Victor's post includes a statement that Victor had possession of documentation to support his statements: "he knows I have the documentation to prove it if he ever thought about denying them." Victor did not provide this documentation in the trial court. Although Victor has stated that he believed the statements were true, and that he relied upon Gonzales's Facebook posts, the record contains no testimony specifying the post on which he was relying. It is unclear from the record whether the posts about the backpacks were the only posts from Gonzales on which Victor was relying to make the statement. If so, these posts do not contain a statement by Gonzales admitting that he stored and distributed stolen merchandise. Victor does not argue that he misinterpreted the Facebook posts from Gonzales that are in the appellate record, nor could a reasonable fact finder conclude that Gonzales admitted to storing or distributing stolen merchandise in any of these posts.

Under the applicable standard of review, the record contains clear and specific evidence establishing a prima facie case that Trevino III published to a third party an implied statement that Gonzales admitted to storing and distributing stolen merchandise while acting with actual malice regarding the statement's truth.[51]

## C. Statement Regarding Domestic Violence Filing

The evidence shows that Trevino III published a statement that "your Republican candidate is the only candidate which his previous girlfriend/ex wife filed on him while with HPD for Domestic Violence." In these statements Victor III asserts that while Gonzales was working for the Houston Police Department, his

---

[51] *See Robert B. James, DDS, Inc.*, 553 S.W.3d at 612; *Warner Bros. Entertainment, Inc.*, 538 S.W.3d at 804–12.

ex-girlfriend or ex-wife filed a domestic-violence complaint against Gonzales and that more women are verifying this fact on Facebook. Clear and specific evidence establishes a prima facie case that the "Republican candidate" to which Trevino III referred was Gonzales. In his affidavit Gonzales states that Victor III's post that Gonzales's "ex-wife or girlfriend had made a domestic violence complaint against [him] . . . completely false." Gonzales testified that "[n]o such complaint has ever been filed against [Gonzales] by anyone including an ex-wife of girlfriend." Clear and specific evidence establishes a prima facie case that Trevino III published to a third party a statement of fact in written or graphic form — that Gonzales's former girlfriend or ex-wife filed a complaint against Gonzales alleging domestic violence — and that this statement was false and defamatory per se concerning Gonzales.[52]

The majority does not address the falsity of the statement that "your Republican candidate is the only candidate which his previous girlfriend/ex wife filed on him while with HPD for Domestic Violence."[53] Instead, the majority concludes that the "gist" of this publication "is that Gonzales is unfit to be constable because he has been convicted of one criminal offense, disciplined for official misconduct, and accused of, or investigated for, additional offenses."[54] Rather than analyze the express statement that Trevino III made, the majority analyzes what it calls "the implicit accusation . . . that Gonzales committed the crime of domestic violence." The majority then concludes that clear and specific evidence does not establish a prima facie case that this implicit statement is false.[55]

---

[52] *See In re Lipsky*, 460 S.W.3d at 593; *Tatum*, 554 S.W.3d at 629–31, 637–38.

[53] *See ante* at 16–17.

[54] *Ante* at 16.

[55] *See ante* at 16–17.

17

The majority skips an essential step in the analysis. Though a plaintiff may base a textual-defamation claim on the gist of the text or on an implication from the text, a plaintiff also may base a textual-defamation claim on the meaning of an explicit statement in the text.[56] Therefore, the majority should address the falsity of the statement that "your Republican candidate is the only candidate which his previous girlfriend/ex wife filed on him while with HPD for Domestic Violence."[57]

The next issue is whether clear and specific evidence establishes a prima facie case that Trevino III published this statement while acting with actual malice regarding the statement's truth. Victor filed an affidavit stating he based his post "on information received from other residents of East End, Houston, Texas, as well as Facebook Posts by Stella Cevallos-Vinson and Plaintiff Richard Gonzales, which I believed to be true." Neither party presented any documentation showing that any former girlfriend or ex-wife of Gonzales ever filed a complaint alleging Gonzales committed domestic violence.

Statements made by Stella Cevallos-Vinson in the Cevallos-Vinson's Facebook Post and Facebook Timeline String show that she contends that Gonzales abused her years before; but Cevallos-Vinson does not say that she or any other person filed a complaint alleging that Gonzales committed domestic violence or that she or any other person otherwise reported this alleged domestic violence by Gonzales to authorities or sought to have charges brought against Gonzales. In fact, in one of her Facebook posts, Cevallos-Vinson states "no it wasn't reported to the police . . . stupidity on my part and I was still dating him." None of Cevallos-Vinson's posts in the record state that there were charges "filed on" Gonzales. None of Gonzales's posts in the record state that there were charges

---

[56] *See Tatum*, 554 S.W.3d at 627–28.

[57] *See id.*

"filed on" Gonzales.  The Facebook Timeline String includes one post by a person named "Joe Joey" who mentions "reported allegations of Drunken Domestic Violence" in reference to Gonzales, but that post does not state that any person filed a complaint alleging that Gonzales committed domestic violence or that any person otherwise reported alleged domestic violence by Gonzales to authorities or sought to have charges brought against Gonzales.

Trevino III's statement that he believed his statements were true does not conclusively negate actual malice.[58]  Likewise, nothing in the record from Victor III's other purported sources suggests that Gonzales's former girlfriend or ex-wife filed a complaint against Gonzales alleging  domestic violence.  Victor does not contend that there is any basis in the record from which Victor might reasonably infer that such a complaint was made, and the record does not reflect any basis for such an inference.  As with the other statements in Victor's post, they were made alongside his contention that they were supported by documentation. Victor's failure to identify the "documentation" to which he refers in his post that allegedly would show that Gonzales had domestic-violence complaints "filed on" or against him tends to suggest that documentation did not exist.

Under the applicable standard of review, clear and specific evidence establishes a prima facie case that Trevino III published to a third party by written or graphic means a statement that Gonzales's former girlfriend or ex-wife filed a complaint against Gonzales alleging domestic violence while acting with actual malice regarding the statement's truth.[59]  Thus, this court should overrule the Trevino Parties' second issue as to Gonzales's defamation and libel claims against

---

[58] *See Bentley*, 94 S.W.3d at 591.

[59] *See Robert B. James, DDS, Inc.*, 553 S.W.3d at 612; *Warner Bros. Entertainment, Inc.*, 538 S.W.3d at 804–12.

19

Trevino III.

## IV. Did the trial court err in denying court costs, reasonable attorney's fees, other expenses, and sanctions under section 27.009(a)?

In their third issue, the Trevino Parties assert that the trial court erred in denying their request for attorney's fees and sanctions under section 27.009(a).[60] Section 27.009, entitled "Damages and Costs," mandates that if an action is dismissed under the Act, the trial court "shall award to the moving party . . . court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require," as well as "sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter."[61] Because the trial court did not err in denying the motion to dismiss by Victor III or by Thomas, the trial court did not err in denying court costs, reasonable attorney's fees, other expenses, and sanctions under section 27.009(a).[62]

Because the trial court erred in denying Rodriguez's motion to dismiss under the Act, the trial court also erred in denying court costs, reasonable attorney's fees, other expenses, and sanctions under section 27.009(a).[63] Thus, this court should overrule the third issue as to Victor III and Thomas and sustain the third issue as to Rodriguez.

---

[60] Tex. Civ. Prac. & Rem. Code Ann. § 27.009(a) (West, Westlaw through 2017 1st C.S.).

[61] Tex. Civ. Prac. & Rem. Code Ann. § 27.009(a); *see Sullivan v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016) (stating "[b]ased on the statute's language and punctuation, we conclude that the [Act] requires an award of 'reasonable attorney's fees' to the successful movant").

[62] *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.009(a).

[63] *See id*.

### III. CONCLUSION

The trial court erred in denying Rodriguez's motion to dismiss, so this court correctly reverses the trial court's order and remands as to Gonzales's claims against Rodriguez. But, because the trial court did not err in denying either the motion to dismiss by Victor III or the motion to dismiss by Thomas, the court should affirm the trial court's order to the extent the trial court denied these motions. Because the majority instead reverses, I respectfully dissent as to this part of the court's judgment.


/s/    Kem Thompson Frost
Chief Justice

Panel consists of Chief Justice Frost and Justices Christopher and Jamison. (Christopher, J., majority).