# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-19-00908-CV

**Francis Campone and Sai Temple of Spiritual Healing, Inc., Appellants**

**v.**

**Steven Kline and Phaedra Kline, Appellees**

### FROM THE 98TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-15-004361, THE HONORABLE MAYA GUERRA GAMBLE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

After considering appellants' motion for rehearing and appellees' response, we grant rehearing, withdraw our previous opinion and judgment issued on August 13, 2020, and substitute the following opinion and judgment in their place.

Francis Campone and Sai Temple of Spiritual Healing, Inc., sued Steven and Phaedra Kline for defamation. The trial court granted the Klines' motion for summary judgment, and Campone and Sai Temple appeal. For the reasons explained below, we will affirm the summary judgment as to Sai Temple's claim but reverse the summary judgment as to Campone's claim and remand for further proceedings.

## BACKGROUND

Campone, a spiritualist minister and healer, started Sai Temple in 2006 and is its president and chief executive officer. The Klines were members of the Sai Temple community, and Steven served as Sai Temple's main volunteer and volunteer coordinator for about five years and was Campone's "right hand man." In 2013, Steven resigned from Sai Temple and ceased his association with it.

In September 2015, Campone filed the underlying lawsuit upon hearing that Steven was telling people that Campone was having "inappropriate sexual relationships with women." The Klines filed a motion to dismiss under the Texas Citizens Participation Act (TCPA), which the trial court granted. On appeal, this Court affirmed the dismissal order except for Campone's and Sai Temple's claims against Steven related to one conversation that Steven allegedly had with Charlotte Michelson, which claims we remanded for further proceedings because the TCPA motion was untimely as to them. *See Campone v. Kline*, No. 03-16-00854-CV, 2018 WL 3652231, at *1 (Tex. App.—Austin Aug. 2, 2018, no pet.) (mem. op.). Steven's allegedly defamatory statement to Michelson was that Campone had or was having an affair with a particular married woman.[1]

On remand, the Klines filed a traditional and no-evidence motion for summary judgment. The trial court granted the motion without specifying the grounds on which its determination was based, and Sai Temple and Campone appeal.

---

[1] Because the factual and procedural background of the parties' relationship and dispute is recounted in detail in our prior opinion, we dispense with any further recitation of the background here. *See Campone v. Kline*, No. 03-16-00854-CV, 2018 WL 3652231, at *2–4 (Tex. App.—Austin Aug. 2, 2018, no pet.) (mem. op.).

**DISCUSSION**

Sai Temple and Campone challenge each of the grounds that the Klines asserted in their summary-judgment motion: (1) that Sai Temple cannot provide any admissible evidence to support three of the requisite four elements of its remaining defamation claim against Steven, and that Campone cannot provide any admissible evidence to support two of the requisite elements; (2) that Sai Temple's and Campone's claims against Steven are barred by the statute of limitations and that the discovery rule does not apply; (3) that Steven's statement to Michelson (the Michelson statement) was protected by the common-law qualified privilege; and (4) that the Klines are entitled to attorney's fees for the non-Michelson-related claims that were dismissed under the TCPA, which dismissal was affirmed on appeal.

*Whether no-evidence summary judgment was proper*

A party is entitled to no-evidence summary judgment when, after adequate time for discovery, there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. Tex. R. Civ. P. 166a(i). When reviewing a no-evidence summary judgment, we review the evidence presented by the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). The trial court must grant the motion unless the respondent produces summary- judgment evidence raising a genuine issue of material fact on the challenged elements. Tex. R. Civ. P. 166a(i). To raise a genuine issue of material fact, the nonmovant must set forth more than a scintilla of probative evidence as to the challenged essential elements of its

3

claim on which it would have the burden of proof at trial. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). More than a scintilla of evidence exists if the evidence supporting a finding rises to a level that would enable reasonable and fair-minded persons to differ in their conclusions. *Id.*

The elements of a defamation claim are: (1) the publication by the defendant of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) that proximately caused damages. *Anderson v. Durant*, 550 S.W.3d 605, 617–18 (Tex. 2018). In their motion, the Klines contended that Sai Temple could not produce any evidence of the second, third, and fourth elements and that Campone could not produce any evidence of the third and fourth elements, with the requisite degree of fault being actual malice because Campone is a public figure. Campone and Sai Temple argue that Campone is not a public figure and must only prove that Steven acted negligently but that there is more than a scintilla of evidence to support the third element under either fault standard.

*Challenged elements as to Sai Temple's claim*

Steven contended that Sai Temple could produce no evidence of the second element of defamation—that the Michelson statement was defamatory as to Sai Temple itself—because there is no evidence that Steven "even mentioned Sai Temple" in his alleged statement to Michelson. We agree that Sai Temple has not met its burden to create a genuine issue of material fact on this element. While it is true that an organization has a reputation that can be defamed, *see General Motors Acceptance Corporation v. Howard*, 487 S.W.2d 708, 712 (Tex. 1972); *De Mankowski v. Ship Channel Development Company*, 300 S.W. 118, 122 (Tex. App.—Galveston 1927, no writ), Sai Temple has identified no evidence in the record demonstrating

4

that Steven's alleged statement to Michelson was defamatory *concerning Sai Temple*. *See De Mankowski*, 300 S.W. at 122 ("It goes without saying that a corporation cannot recover for damages for slander of its president which affects only his reputation."). The only evidence of any defamatory content in the Michelson statement concerned Campone personally, not Sai Temple. Accordingly, the trial court properly granted no-evidence summary judgment on Sai Temple's claim, and we need not determine whether the evidence created a fact issue on the other challenged elements of Sai Temple's claim or address its other issues on appeal.

*Challenged elements as to Campone's claim*

As to the third element, the requisite degree of fault, the defendant must act with actual malice if the plaintiff is a public figure or official or must act negligently if the plaintiff is a private individual. *See Rodriguez v. Gonzales*, 566 S.W.3d 844, 851 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). Campone argues that there is more than a scintilla of evidence to support this element under either the negligence or actual-malice standard. Accordingly, we will assess whether Steven acted with actual malice when making the alleged defamatory statement, and we express no opinion on the issue of whether Campone qualifies as a public figure. "To establish actual malice, a public figure must prove that the defendant made the statement 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Turner v. KTRK TV, Inc.*, 38 S.W.3d 103, 120 (Tex. 2000) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964)). In this context, "reckless disregard" means that the defendant "entertained serious doubts as to the truth of his publication." *Id.* Although actual malice focuses on the defendant's state of mind, a plaintiff can prove it through objective evidence about the publication's circumstances. *Id.*; *see Bentley v. Bunton*, 94 S.W.3d 561, 596 (Tex.

2002) ("The defendant's state of mind can—indeed, must usually—be proved by circumstantial evidence."). Actual malice may be inferred from "the relation of the parties, the circumstances attending the publication, the terms of the publication itself, and from the defendant's words or acts before, at, or after the time of the communication." *Dolcefino v. Turner*, 987 S.W.2d 100, 111–12 (Tex. App.—Houston [14th Dist.] 1998), *aff'd sub nom. Turner*, 38 S.W.3d 103.

The alleged defamatory statement at issue is Steven's representation to Michelson that Campone was having an affair with a particular named woman. Evidence in the form of Michelson's affidavit and deposition transcript, Steven's deposition transcript, and the affidavit of Rupal Campone, wife of Francis Campone, supports this allegation. In his deposition, Steven testified that a woman identified as an "angel reader" in the temple community had told him that "three separate women [had] come to see her for sessions" and told her about Campone's alleged sexual impropriety with them. Specifically, Steven testified that the angel reader told him the following: one of the three women had "inferred [sic] very strongly that she had an ongoing sexual relationship" with Campone and the other two had told the angel reader that Campone was hoping for them to "be his [new] mate" because he believed that "Rupal [wa]s soon going to die." Notably, however, Steven testified that the angel reader did not tell him the names of the three women, and he repeatedly denied ever knowing the names of any women with whom Campone was allegedly having inappropriate sexual relations. He testified that he and other temple members had heard rumors about Campone's inappropriate sexual relations but that it was "pure speculation" as to who the women were because no one had even "float[ed]" names with him. The angel reader's affidavit corroborates Steven's averment that, while she told him that she had counseled "three separate women" with whom Campone had "acted inappropriately, in a sexual way," she did not tell him the names of those women, and none of them were the

6

woman who Steven identified to Michelson. Furthermore, there is no evidence that Steven attempted to determine the veracity of the alleged Michelson statement even though he had received a cease-and-desist letter two months prior, putting him on notice that Campone considered the statements Steven was making to be defamatory.

There is also evidence in the record about the circumstances surrounding Steven's alleged statement to Michelson from which a reasonable factfinder could infer that he had a motive to injure Campone, which could lend support to a finding of actual malice. *See Bentley*, 94 S.W.3d at 591 (noting that defendant's motive can be factor in proving defendant's state of mind through circumstantial evidence). Steven testified that he had previously made a $25,000 donation to Sai Temple for the purchase of a farm and expressed to Campone in a February 2014 email that he wanted reimbursement because he had learned that Sai Temple was selling the property. Instead of a response to his email, Steven received a cease-and-desist letter demanding that he stop making defamatory statements about Campone. Michelson testified that she and Steven did not really know each other and had only said hello three or four times in the past, which could support a finding that Steven's alleged defamatory statement to her was motivated by malice, in an attempt to spread the alleged rumor and thereby injure Campone. She also testified that Steven had told her he had given Campone "a lot of money" and wanted it back. The woman who Steven identified to Michelson as the one with whom Campone was allegedly having an affair testified that Steven never asked her whether Campone had acted inappropriately towards or had an affair with her even though, according to Steven's testimony, she and Steven are "good friends."

From this evidence, a reasonable factfinder could infer that Steven acted with actual malice—that is, with reckless disregard and with serious doubts as to the truth—in

7

identifying by name a particular woman with whom Campone was allegedly having an affair, when Steven admittedly did not know the names of *any* of the women he had heard "rumors" about, especially after Campone had allegedly ignored Steven's request for reimbursement of his large donation and in light of the fact that Steven made the Michelson statement well after receiving the cease-and-desist letter. The evidence in the record amounts to more than a scintilla on the issue of Steven's state of mind in making the alleged defamatory statement to Michelson, specifically, on whether he acted with actual malice.

As for the fourth challenged element, damages, we conclude that Campone produced summary-judgment evidence of actual damages in the form of Michelson's affidavit that she ceased attending weekly temple services and making regular donations after what Steven told her because it "infected her view" of Campone, indicating some damage to Campone's reputation as well as economic damages. Furthermore, Campone averred in his declaration that his salary is sourced from temple donations and he was forced to move away to conduct healing sessions in other states to compensate for the loss of income caused by Steven's alleged defamation. We conclude that Campone met his burden to produce evidence raising a material fact issue on the element of damages. Accordingly, the trial court erred in granting Steven no-evidence summary judgment on Campone's defamation claim arising from the alleged Michelson statement, and we sustain Campone's first issue.

***Whether the discovery rule tolls limitations***

In his second issue, Campone contends that his claim is not barred by the statute of limitations because the limitations period was tolled by the discovery rule, which he pleaded. A one-year statute of limitations applies to an action for defamation, Tex. Civ. Prac. & Rem.

Code § 16.002(a), and an action for defamation accrues when the defamatory statement is published, *San Antonio Credit Union v. O'Connor*, 115 S.W.3d 82, 96 (Tex. App.—San Antonio 2003, pet. denied) (citing *Kelley v. Rinkle*, 532 S.W.2d 947, 949 (Tex. 1976)). However, the discovery rule applies to an action for defamation when a defamatory statement is not a matter of public knowledge. *Wheeler v. Methodist Hosp.*, 95 S.W.3d 628, 636–37 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *Newsom v. Brod*, 89 S.W.3d 732, 736 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *see Kelley*, 532 S.W.2d at 949 (holding that discovery rule applied to defamation claim for alleged false report to credit agency where report was not matter of public knowledge).

We apply the discovery rule categorically, rather than on a case-by-case basis, because such approach "brings predictability and consistency to the jurisprudence." *See Wagner & Brown, Ltd. v. Horwood*, 58 SW.3d 732, 735 (Tex. 2001) (quoting *Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 122 (Tex. 2001)). For defamation cases where the alleged statement has been made in private and is not a matter of public knowledge, the discovery rule applies as a matter of law and defers the accrual of the cause of action until the earlier of when the plaintiff learned of or, through the exercise of reasonable care and diligence, should have learned of the existence of the defamatory statement. *See Wheeler*, 95 S.W.3d at 637 (citing *Kelley*, 532 S.W.2d at 949). Because Steven allegedly made his statement privately only to Michelson, we conclude that the discovery rule tolls limitations on Campone's claim until the earlier of when he learned of the communication or through the exercise of reasonable diligence should have learned of it. *See Kelley*, 532 S.W.2d at 949; *Wheeler*, 95 S.W.3d at 637.

To be entitled to summary judgment on limitations when the plaintiff has pleaded the discovery rule, the movant must conclusively prove when the cause of action accrued and must negate the discovery rule by proving as a matter of law that there is no genuine issue of fact

9

about when the plaintiff discovered the nature of the injury. *Burns v. Thomas*, 786 S.W.2d 266, 267 (Tex. 1990); *Wheeler*, 95 S.W.3d at 637. In his summary-judgment motion, Steven did not identify any date by which Campone should have, through the exercise of reasonable diligence, learned about the Michelson statement,[2] nor did Steven identify any evidence supporting his argument. Rather, he merely cited this Court's earlier opinion in which we determined that, as to acts of alleged defamation *before* the Michelson statement, "limitations began to run sometime between December 2013 and February 18, 2014, which was the latest date on which [Campone] knew or suspected that Steven was defaming [him] to some degree." *Campone*, 2018 WL 3652231, at *9. February 18, 2014, was the date on which Campone sent Steven a cease-and-desist letter in response to reports that Steven had made defamatory statements to people other than Michelson, and this Court held that "[b]ecause Campone's affidavit establishes that [he] had actual notice of the potential harm as of that date, [he] had one year to investigate the extent of the defamation and file suit." *Id.* However, Steven's alleged statement to Michelson did not occur until more than two months later, and Texas law treats each alleged defamatory publication as a single transaction with an independent injury. *Texas Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 587 (Tex. App.—Austin 2007, pet. denied); *see Deaver v. Desai*, 483 S.W.3d 668, 676 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (noting that each distinct act of publication has its own accrual date for limitations purposes).

When a party should have learned about a defamatory statement, and whether the party exercised reasonable diligence, are fact questions to be determined by the factfinder unless "reasonable minds could not differ about the conclusion to be drawn from the facts in the

---

[2] There is no dispute that Campone filed suit within a year of actually learning about the Michelson communication.

record," in which case the start of the limitations period can be determined as a matter of law. *Childs v. Haussecker*, 974 S.W.2d 31, 44 (Tex. 1998); *Wheeler*, 95 S.W.3d at 637. As with any summary-judgment review, we must take all evidence favorable to Campone as true and resolve all reasonable inferences and doubts in his favor. *See Childs*, 974 S.W.2d at 44 (citing *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985)). We must therefore determine whether, resolving reasonable inferences in Campone's favor, the only reasonable conclusion on this record is that Campone should have learned about Steven's private statement to Michelson within a year of his making it.

While Steven does not identify a date by which Campone should have, through the exercise of reasonable diligence, learned about the Michelson statement, he supports his entitlement to summary judgment on the discovery rule by citing the following evidence: Campone's averment that, after sending the cease-and-desist letter, he and Rupal "did not take any further action" about the "false statements" Steven had allegedly been making about Campone; Michelson's testimony that she had attended weekly healing sessions with Campone since 2007 but stopped going after Steven made the alleged defamatory statement to her because she "was afraid" of what Steven had told her; and Michelson's calendar entries indicating that she had weekly meetings with Campone from February 24 through April 22, 2014, but that the meetings abruptly stopped thereafter.[3] Steven submits that "reasonable diligence should have led [Campone] to follow up with a regular follower who abruptly stopped coming to see him," which demonstrates "as a matter of law that [Campone] failed to exercise reasonable diligence."

---

[3] The record does not indicate that the meetings were to occur indefinitely rather than only for the particular number of sessions noted in Michelson's calendar.

However, even had Campone reached out to Michelson after she stopped attending healing sessions and meeting with him, we cannot reasonably conclude from this record that Michelson would necessarily have disclosed to Campone the statements Steven had made to her or discern at which particular point in time she might have, given her testimony that she was "afraid" of Campone based on what Steven had told her. Michelson testified that she was "shocked" and "concerned" by the "scary" things Steven had told her and afterwards called two people from the temple community, one of whom told her "[t]he exact, same things" and that it would be "dangerous" for Michelson to "go back" to see Campone. The other person told Michelson that he "didn't know anything" except that "nobody believed in [Campone] anymore." Michelson testified that thereafter she "never picked up the phone" when the first person called her because she "didn't want to talk to her anymore."

Michelson testified that around the same time she received a phone call from a third temple member who "said the same things" as Steven. This third person told Michelson that she believed the information she was passing along, which "shocked" Michelson because the person was a "real big fan" of Campone. Furthermore, while Campone averred that in February 2014 he noticed people had been "disappearing" from healing sessions and that he and Rupal eventually moved to California because of attendance downturn, it does not follow that he should have or could have reached out to everyone who stopped attending, especially after he had moved away, and Steven has identified no evidence indicating how large the temple community was. It cannot be determined as a matter of law based on the summary-judgment evidence that Campone's failure to follow up with one particular temple member, in light of all the circumstances, was a failure to exercise reasonable diligence. The summary-judgment evidence does not conclusively establish when exactly Michelson changed her mind and decided to tell

Campone about what Steven had told her, or whether she would have shared that information with Campone any earlier than when she did in February 2015.

Furthermore, the record contains evidence supporting the conclusion that the actions Campone took may have been an exercise of reasonable diligence under the circumstances. For instance, after he and Rupal sent Steven the cease-and-desist letter, they could reasonably have believed that Steven would not again spread "false rumors" based on his March 1, 2014 emailed response to them that it was "incorrect" that he had made false and defamatory statements about Campone and that "the content of discussions I had with a very few people was not precisely, accurately and completely communicated." In May 2014, Campone sent an email to the email list maintained by the temple referencing prior emails that Steven had sent to the distribution list, apologizing therefor, and requesting that if anyone receives "any other emails" from Steven to "please forward them to" Campone and Sai Temple "so we can have our attorneys deal with them." Lastly, the record contains evidence in the form of Sai Temple board-meeting minutes indicating that temple attendance, volunteer interest, and donations had been steadily declining for at least a year by early 2014 and that due to "serious setbacks," including "paranoia" and theft by some temple volunteers of one of the temple's horses, "malaise seemed to be spreading in the congregation." In light of all this, a reasonable factfinder could conclude that Michelson ceasing to attend the temple and discontinuing contact with Campone—amidst the ongoing dwindling membership, donations, and malaise—was due to factors other than any additional alleged defamatory statements that Steven made after the cease-and-desist letter and that reasonable diligence did not require anything more of Campone.

On this record, viewing the evidence in favor of Campone and resolving all reasonable inferences in his favor, we conclude that Steven did not conclusively establish any

13

date by which Campone should have discovered the alleged Michelson statement and that genuine issues of material fact exist concerning when, through the exercise of reasonable diligence, Campone should have discovered the Michelson statement. Accordingly, Steven was not entitled to summary judgment on the ground of limitations as modified by the discovery rule.

***Whether Steven was entitled to summary judgment on the defense of qualified privilege***

Qualified privilege is an affirmative defense, *see Burbage v. Burbage*, 447 S.W.3d 249, 254 (Tex. 2014), on which Steven had the burden to conclusively establish each element, *see Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). The common law provides a qualified privilege against defamation liability when a "communication is made in good faith and the author, the recipient or a third person, or one of their family members, has an interest that is sufficiently affected by the communication." *Burbage*, 447 S.W.3d at 254 (quoting *Cain v. Hearst Corp.*, 878 S.W.2d 577, 582 (Tex. 1994)). If a defendant establishes the privilege, the burden shifts to the plaintiff to prove that the defendant made the statement with actual malice, which as discussed above, means "the making of a statement with knowledge that it is false, or with reckless disregard of whether it is true." *Id.* (quoting *Hagler v. Proctor & Gamble Mfg. Co.*, 884 S.W.2d 771, 772 (Tex. 1994) (per curiam)); *see also Turner*, 38 S.W.3d at 120 (noting that "reckless disregard" in defamation context means that defendant "entertained serious doubts as to the truth of his publication" (citation omitted)). Although actual malice focuses on the defendant's state of mind, a plaintiff can prove it through objective evidence about the publication's circumstances. *Turner*, 38 S.W.3d at 120. Thus, Steven had the burden to conclusively establish that (1) his statement to Michelson was made without actual malice and

(2) he or Michelson had an interest sufficiently affected by the communication. *See Burbage*, 447 S.W.3d at 254.

We have already determined that there is a genuine issue of material fact about whether Steven's statement was made with actual malice. Therefore, without needing to determine whether he conclusively established that he and Michelson had an interest sufficiently affected by the communication, he did not conclusively establish that his statement was made without actual malice and was thus not entitled to summary judgment on the affirmative defense of qualified privilege. We sustain Campone's third issue.

### *Whether the Klines were entitled to summary judgment on their claim for attorney's fees*

In their last issue, Campone and Sai Temple contend that the trial court erred in awarding attorney's fees to the Klines on the defamation claims that were dismissed (as affirmed by this Court on appeal) pursuant to the Klines' TCPA motion because there was a material fact issue as to whether the fees were properly segregated. While the TCPA entitles the Klines to an award of reasonable and necessary attorney's fees incurred in pursuing their TCPA motion, *see* Tex. Civ. Prac. & Rem. Code § 27.009, an award of attorney's fees cannot be made by summary judgment unless there is no material fact issue regarding the amount of fees that was reasonable and necessary, *see* Tex. R. Civ. P. 166a(a); *Melton v. CU Members Mortg.*, 586 S.W.3d 26, 37 (Tex. App.—Austin 2019, pet. denied) ("The attorney for the nonmovant may file an affidavit contesting the reasonableness of the movant's attorney's affidavit in support of attorney's fees, thus creating a fact issue.").

The Klines attached the affidavit of their attorney, James A. Reed, to support their request for attorney's fees. Reed averred that he segregated the fees and percentages of fees

15

"applicable solely" to the plaintiffs' remaining, non-dismissed claims from those amounts applicable to the claims that were dismissed under the TCPA, attaching billing records and a spreadsheet he compiled segregating the fees, costs, and expenses.

Appellants contend that the affidavit of their attorney, John Thomas—which they attached to their response to the Klines' summary-judgment motion—creates a material fact issue as to the amount of attorney's fees to which the Klines are entitled with respect to their TCPA motion. Thomas averred that the attorney's fees attested to by the Klines' attorney "are not reasonable or necessary" because they "were not properly segregated from nonrecoverable fees." Thomas's affidavit continues:

> The claims dismissed under the TCPA were only those new claims added in Plaintiff's second amended petition . . . . The original claims against Steven Kline that had been on file prior to that time were not dismissed. Yet, Defendants improperly seek to recover attorney's fees and costs for work done on those original claims before [the second amended petition was filed] . . . . Defendants claim 90% of the work done on the motion to dismiss and its appeal should be awarded when a proper allocation would be 50% at most since the dismissal of the core claims against Steven was reversed by the Court of Appeals. Finally, Defendants improperly seek to recover fees and costs for work that would have occurred in connection with the core claims against Steven that were not dismissed, whether or not the dismissed claims were present.

We conclude that Thomas's affidavit created a material fact issue on the reasonableness and necessity of the fees the Klines sought by opining that the Klines were seeking to recover fees and costs for work done before the dismissed claims were added—which assertion is supported by the dated billing records and spreadsheet submitted by Reed—and that Reed allocated too high a percentage to the work that was intertwined with work done on the "core" (Michelson) claims. *See Melton*, 586 S.W.3d at 37 (remanding issue of attorney's fees awarded on summary judgment for determination of reasonable amount because there was

16

genuine issue of material fact concerning whether award improperly included fees for preparing for first appeal when applicable law did not so allow); *Patton v. Teets*, No. 03-99-00065-CV, 2000 WL 45650, at *3 (Tex. App.—Austin Jan. 21, 2000, no pet.) (not designated for publication) (concluding that although factual basis for nonmovant's attorney's controverting opinion about reasonableness of attorney's fees was "not extensive," it nonetheless constituted "more than a conclusory statement" challenging reasonableness and created fact issue); *General Specialties, Inc. v. Charter Nat'l Bank-Hous.*, 687 S.W.2d 772, 774 (Tex. App.—Houston [14th Dist.] 1985, no writ) (concluding that affidavit of nonmovant's attorney averring that there was no direct connection between work actually done on case and amount of fees requested by movant's attorney and that much smaller amount would be reasonable for such work raised fact issue precluding summary judgment). Accordingly, we sustain appellants' fourth issue.

## CONCLUSION

We affirm in part the trial court's summary judgment as to Sai Temple's defamation claim but reverse the remainder of the summary judgment and remand for further proceedings both Campone's defamation claim against Steven arising from the Michelson conversation and the Klines' claim for attorney's fees under the TCPA.

 

_____

Thomas J. Baker, Justice

Before Chief Justice Rose, Justices Baker and Triana

Affirmed in Part; Reversed and Remanded in Part on Motion for Rehearing

Filed:   December 22, 2020

17