**Affirmed and Memorandum Opinion filed April 9, 2020.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-18-01017-CV

---

### HDG, LTD. D/B/A HUNTON DISTRIBUTION, Appellant

### V.

### KELLY BLASCHKE, Appellee

---

**On Appeal from the 55th District Court
Harris County, Texas
Trial Court Cause No. 2018-38838**

---

## M E M O R A N D U M   O P I N I O N

Appellee Kelly Blaschke sued appellant HDG, Ltd. d/b/a Hunton Distribution, asserting claims arising from statements a Hunton employee made about her departure from the company. Hunton filed a motion to dismiss Blaschke's claims under the Texas Citizens' Participation Act ("TCPA"). The trial court denied the motion to dismiss and Hunton filed this interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(12). For the reasons below, we affirm the trial court's denial of Hunton's motion to dismiss.

BACKGROUND

In June 2018, Blaschke sued Hunton and asserted claims for breach of contract, defamation, and intentional infliction of emotional distress ("IIED"). Blaschke had been employed by Hunton and, in her original petition, stated that she and Hunton had entered into a severance agreement to resolve discrimination claims she brought against the company. The severance agreement was dated May 4, 2018 and prohibited Blaschke and Hunton from making "disparaging comments" about each other. Blaschke alleged that, contrary to the parties' severance agreement, Hunton employee Robert Tyler made the following statements about her at a May 14, 2018 meeting with other Hunton employees:

> [Blaschke] had an affair with a customer. His wife then contacted the company and made a big stink about it. [Blaschke] then lied to me about it and we had to let her go.

Blaschke alleged that these statements were repeated to other individuals both inside and outside of Hunton.

Hunton filed an answer to Blaschke's original petition and a motion to dismiss under the TCPA. Blaschke responded to Hunton's motion to dismiss, asserting her claims did not implicate the TCPA and requesting the trial court's permission to depose Tyler. The trial court held a hearing on Hunton's motion to dismiss on October 15, 2018.[1]

Two weeks after the hearing, Blaschke filed an amended petition omitting her IIED claim. Blaschke also filed "Evidence in Support of Denial of Defendant's Motion to Dismiss," which included affidavits from the following individuals:

- Jessica Vail, a former Hunton employee. Vail said she attended the May 14 meeting with Tyler and other Hunton employees. According

---

[1] A transcript of the October 15, 2018 hearing was not included with the appellate record.

2

to Vail, Tyler told the meeting's attendants that Blaschke was "let go" from Hunton because she had "a relationship with a customer" and "lied about it."

- Robert Tyler, Hunton's vice president of sales. Tyler stated that he told his sales team at the May 14 meeting that Blaschke had become "romantically involved" with a customer and was untruthful about it. Tyler denied stating that Blaschke was "fired" or "let go."

- Sergio Ramirez, the owner of S&R Services. Ramirez stated that he was told Blaschke "had an affair with a customer and lied about it and was fired." Ramirez stated that, because of this information, he decided against retaining Blaschke or her current employer, Goodman Air Conditioning and Heating, for his company's needs.

- Kelly Blaschke. Blaschke stated that Hunton employees informed her about the "disparaging comments" Tyler made at the May 14 meeting. Blaschke said the comments damaged her reputation and required her to seek medical care. Blaschke also asserted that the comments caused her to lose a commission and bonus from her employer, Goodman Air Conditioning and Heating.

Blaschke also included with her evidentiary filing a transcript of Tyler's deposition, where he testified that he believed Blaschke was not forthcoming about her relationship with a customer. Tyler also stated that he told the sales team at the May 14 meeting that Blaschke "decided to leave [Hunton] of her own volition." Tyler denied stating that Blaschke was "fired" or "let go."

Hunton objected and moved to strike the evidence included with Blaschke's filing. Hunton also filed an amended answer asserting the affirmative defense of qualified privilege.

On November 2, 2018, the trial court held a second hearing on Hunton's motion to dismiss. The trial court denied Hunton's motion in an order signed November 5, 2018. Hunton timely appealed.

ANALYSIS

Appealing the trial court's denial of its TCPA motion to dismiss, Hunton asserts five issues:

1. The claims in Blaschke's original petition implicate Hunton's exercise of its right of free speech and right of association.

2. The trial court erred by overruling Hunton's objections to Blaschke's evidence.

3. Blaschke failed to establish by clear and specific evidence a prima facie case for each essential element of the claims in her original petition.

4. Hunton established by a preponderance of the evidence each element of a valid defense.

5. The trial court erred by denying Hunton's motion to dismiss with respect to Blaschke's nonsuited IIED claim.

We address these issues below.

## I.     Applicable Law and Standard of Review

The express purpose of the TCPA is twofold:  (1) "to encourage and safeguard the [enumerated] constitutional rights," and (2) to "protect the rights of a person to file meritorious lawsuits for demonstrable injury."  Tex. Civ. Prac. & Rem. Code Ann. § 27.002; *Toth v. Sears Home Improvement Prods., Inc.*, 557 S.W.3d 142, 149 (Tex. App.—Houston [14th Dist.] 2018, no pet.).  The TCPA is an anti-SLAPP law; "SLAPP" is an acronym for "Strategic Lawsuits Against Public Participation." *Toth*, 557 S.W.3d at 149.  To effect its stated purpose, the TCPA provides a mechanism for trial courts to identify and summarily dispose of those suits designed only to chill First Amendment rights.  *In re Lipsky*, 460 S.W.3d 579, 589 (Tex. 2015) (orig. proceeding).   But the TCPA is not intended to bring about the dismissal of meritorious lawsuits.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.002 (balancing "the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law"

against "the rights of a person to file meritorious lawsuits for demonstrable injury"); *see also ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017) (per curiam); *Hearst Newspapers, LLC v. Status Lounge Inc.*, 541 S.W.3d 881, 887-88 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

We review *de novo* the trial court's denial of a TCPA motion to dismiss. *O'Hern v. Mughrabi*, 579 S.W.3d 594, 602 (Tex. App.—Houston [14th Dist.] 2019, no pet.). Under this standard, we "make an independent determination and apply the same standard used by the trial court in the first instance." *Cox Media Grp., LLC v. Joselevitz*, 524 S.W.3d 850, 859 (Tex. App.—Houston [14th Dist.] 2017, no pet.). We construe the TCPA liberally to effectuate its purpose and intent. *O'Hern*, 579 S.W.3d at 602. But interpreting the TCPA "has presented challenges to the courts of appeals because of the breadth of its plain language." *Bandin v. Free & Sovereign State of Veracruz de Ignacio de la Llave*, 590 S.W.3d 647, 650 (Tex. App.—Houston [14th Dist.] 2019, pet. filed).

The TCPA establishes a three-step process.[2] First, the moving party must show by a preponderance of the evidence that the plaintiff's claim "is based on, relates to, or is in response to the [moving party's] exercise of: (1) the right of free speech; (2) the right to petition; or (3) the right of association." Act of May 21, 2011, 82d Leg., R.S., ch. 341, 2011 Tex. Gen. Laws 961, 962 (amended 2019) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 27.005). Next, the burden

---

[2] The Texas Legislature amended the TCPA in its most recent legislative session and the amendments are effective September 1, 2019. Because this suit was filed before the effective date of the amendments, it is governed by the statute as it existed before the amendments, and all of our citations are to the TCPA as it existed prior to September 1, 2019. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 1-12, 2019 Tex. Gen. Laws 684, 684-87 (current versions at Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001-.011); *see, e.g., Sullo v. Kubosh*, __ S.W.3d __, 2019 WL 6120878, at *10 n.3 (Tex. App.—Houston [1st Dist.] Nov. 19, 2019, no pet. h.).

shifts to the plaintiff to "establish[] by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* But even if the plaintiff satisfies the second step, the court shall dismiss the plaintiff's claim if the moving party "establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim." *Id.*

We apply this framework to a relatively limited universe of evidence. *Toth*, 557 S.W.3d at 150. To determine whether a claim should be dismissed under the TCPA, the court "shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." Act of May 21, 2011, 82d Leg., R.S., ch. 341, 2011 Tex. Gen. Laws 961, 963 (amended 2019) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 27.006). For good cause, the trial court also may permit specific and limited discovery. *Id.*; *see also Toth*, 557 S.W.3d at 150.

## II. Right of Association

Asserting that Blaschke's original petition implicates the TCPA, Hunton contends her claims are "based on, relate[] to, or [are] in response to" Hunton's exercise of its right of free speech and right of association.

Our analysis of this issue focuses on the allegations and claims in Blaschke's original petition. *See Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018) ("'When it is clear from the plaintiff's pleadings that the action is covered by the [TCPA], the defendant need show no more.'") (quoting *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017)). Blaschke alleged that Tyler made the following statements about her at the May 14 meeting with approximately 20 Hunton sales employees:

> [Blaschke] had an affair with a customer. His wife then contacted the company and made a big stink about it. [Blaschke] then lied to me

6

about it and we had to let her go.

These statements form the basis of Blaschke's claims.[3]

We conclude these pleadings implicate the TCPA's right of association. The TCPA defines an "[e]xercise of the right of association" as "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests." Act of May 21, 2011, 82d Leg., R.S., ch. 341, 2011 Tex. Gen. Laws 961, 961 (current version at Tex. Civ. Prac. & Rem. Code Ann. § 27.001(2)). A "communication" includes "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id*.; *see also Adams*, 547 S.W.3d at 894 (the TCPA's definition of "communication" includes "[a]lmost every imaginable form of communication, in any medium").

Blaschke asserts the employee meeting at which Tyler's alleged statements were made does not constitute a group of individuals "join[ed] together to collectively express, promote, pursue, or defend common interests." But the plain language of this provision casts a wide net. *See ExxonMobil Pipeline Co.*, 512 S.W.3d at 900 (counseling against "improperly narrow[ing] the scope of the TCPA by ignoring the Act's plain language"). Moreover, recent case law from this court prescribes a broader application of the "right of association" than that advocated by Blaschke. *See, e.g.*, *O'Hern*, 579 S.W.3d at 603-04 (TCPA's right of association applied to claims arising from condominium association's board of directors'

---

[3] In her petition, Blaschke also alleged that certain unnamed Hunton employees made additional "disparaging statements" about her to Hunton's customers and told the customers Blaschke "filed sexual harassment claims" against Hunton. These allegations were not reasserted in (1) Blaschke's response to Hunton's motion to dismiss, (2) in the affidavits Blaschke filed as evidence to support the denial of Hunton's motion to dismiss, or (3) in Blaschke's appellee's brief. Accordingly, we do not include them in our analysis of the TCPA's applicability.

decision to levy a special assessment); *Fawcett v. Grosu*, 498 S.W.3d 650, 657 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (the parties were members of a Masonic lodge and charged appellee with violating certain Masonic rules; appellee's claims arising from these charges implicated the TCPA's right of association).

We have previously analyzed the right of association in the employment context in *Abatecola v. 2 Savages Concrete Pumping, LLC*, No. 14-17-00678-CV, 2018 WL 3118601 (Tex. App.—Houston [14th Dist.] June 26, 2018, pet. denied) (mem. op.). There, appellee 2 Savages sued the owners of Hi-Tech Concrete Pumping after Hi-Tech hired Chad MacDonald, one of 2 Savages' former employees. *Id*. at *1-2. 2 Savages asserted that MacDonald's hiring tortiously interfered with the restrictive covenants in MacDonald's employment agreement with 2 Savages. *Id*. Concluding that this claim implicated the TCPA's right of association, this court stated:

> [W]ith respect to MacDonald's hiring, this communication [to effectuate the hiring] was made by individuals who "joine[ed] together to collectively express, promote, pursue, or defend common interests," the common interests being ***the business of Hi-Tech***, or as 2 Savages alleged, Hi-Tech "conspired with Defendant Chad MacDonald to violate and interfere with the Non-Compete Contract between himself and 2 Savages."

(emphasis added).

Here, the statements at issue were made at a meeting between Tyler and other Hunton sales employees. Like the communications in *Abatecola*, Tyler's statements were communicated between individuals who joined together to express, promote, or pursue common interests, *i.e.*, Hunton's business. Therefore, given the plain language of the applicable statute and recent case law, we conclude the claims in Blaschke's original petition implicate Hunton's right of association.

Pointing out that the parties' severance agreement prohibits disparagement,

Blaschke contends that Hunton "contractually waived" its right to rely on the TCPA. But "[w]hether the TCPA allows a party to avoid contractual obligations is not the proper inquiry." *Reeves v. Harbor Am. Cent., Inc.*, 552 S.W.3d 389, 395 (Tex. App.—Houston [14th Dist.] 2018, no pet.); *see also Morgan v. Clements Fluids S. Tex., Ltd.*, 589 S.W.3d 177, 184-85 (Tex. App.—Tyler 2018, no pet.). Instead, the movant need only show that it exercised a statutory right under the TCPA. *See* Act of May 21, 2011, 82d Leg., R.S., ch. 341, 2011 Tex. Gen. Laws 961, 963 (amended 2019); *Reeves*, 552 S.W.3d at 395. Hunton made that showing. We therefore reject Blaschke's contention that the severance agreement forecloses Hunton's reliance on the TCPA.

Accordingly, we conclude Hunton made the initial showing required under the TCPA. *See* Act of May 21, 2011, 82d Leg., R.S., ch. 341, 2011 Tex. Gen. Laws 961, 963 (amended 2019). Therefore, the burden shifted to Blaschke. *Id*.

III.     **Prima Facie Case**

Hunton asserts Blaschke did not satisfy her burden under the TCPA and did not establish by clear and specific evidence a prima facie case for each essential element of her claims. Pointing to the affidavits filed in the trial court, Blaschke contends that she satisfied this burden with respect to her defamation and breach of contract claims.

Hunton also raises numerous issues challenging the trial court's evidentiary rulings with respect to the affidavits filed by Blaschke. We review the trial court's decision to admit or exclude evidence for an abuse of discretion. *Moore v. Mem'l Hermann Hosp. Sys., Inc.*, 140 S.W.3d 870, 873 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *see also Day v. Fed'n of State Med. Bds. of the U.S., Inc.*, 579 S.W.3d 810, 817-18 (Tex. App.—San Antonio 2019, pet. denied) (applying the abuse of discretion evidentiary standard in TCPA context). The burden is on Hunton to show

that the error, if any, in the trial court's rulings resulted in an improper judgment. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995). To that end, we review only those objections necessary to determine whether Blaschke satisfied her burden at this stage of the proceeding. We begin with Hunton's general evidentiary objections and turn to Hunton's specific objections in our analysis of Blaschke's claims.

## A. General Evidentiary Objections

Hunton argues the trial court erred by holding two hearings on Hunton's motion to dismiss: the first on October 18, 2018, and the second on November 2, 2018. Arguing that the TCPA contemplates only a single hearing on the motion to dismiss, Hunton contends that it was error to permit Blaschke to file additional evidence after the first hearing.

We reject Hunton's challenge. A transcript of the October 15, 2018 hearing was not included with the appellate record. Therefore, we cannot determine what transpired at the first hearing or whether it would preclude the trial court from considering Blaschke's evidence or addressing Hunton's motion to dismiss at the November 2 hearing. *See* Tex. R. App. P. 34.6(c)(4); *see also Coe v. Sienna Fin. Servs., LLC*, No. 14-18-00338-CV, 2019 WL 3783561, at *4 (Tex. App.—Houston [14th Dist.] Aug. 13, 2019, no pet.) (mem. op.) ("[I]f an appellant provides a partial reporter's record without including the required statement of points or issues, we must presume the omitted portions of the reporter's record support the trial court's findings"). Moreover, at the November 2 hearing, the trial court stated that it did not intend the earlier hearing to finally dispose of Hunton's motion to dismiss, particularly since additional discovery had been ordered at that time. *See* Act of May 21, 2011, 82d Leg., R.S., ch. 341, 2011 Tex. Gen. Laws 961, 963 (amended 2019) ("On a motion by a party or on the court's own motion and on a showing of

good cause, the court may allow specified and limited discovery relevant to the motion.").

Hunton also broadly asserts that Blaschke cannot satisfy her evidentiary burden because Tyler's affidavit rebuts or contradicts her evidence. But the movant for dismissal under the TCPA has no burden to disprove the existence of a prima facie case. *Rodriguez v. Gonzales*, 566 S.W.3d 844, 849 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). In fact, the movant cannot do so because "prima facie proof is not subject to rebuttal, cross-examination, impeachment, or disproof." *In re Mo. Pac. R.R. Co.*, 998 S.W.2d 212, 216 (Tex. 1999) (orig. proceeding). Accordingly, Tyler's affidavit does not nullify Blaschke's evidence.

We overrule Hunton's general evidentiary objections.

## B. Applicable Law

Because the TCPA applies to Blaschke's claims, she was required to bring forth "clear and specific evidence" establishing a prima facie case for each essential element of her claims to avoid mandatory dismissal. *See* Act of May 21, 2011, 82d Leg., R.S., ch. 341, 2011 Tex. Gen. Laws 961, 963 (amended 2019); *see also ExxonMobil Pipeline Co.*, 512 S.W.3d at 899. The TCPA does not define "clear and specific," so we apply those terms' ordinary meanings: "clear" means "unambiguous," "sure," or "free from doubt" while "specific" means "explicit" or "relating to a particular named thing." *S&S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018); *O'Hern*, 579 S.W.3d at 604. As the Texas Supreme Court has explained, this standard requires the plaintiff to "provide enough detail to show the factual basis for its claim." *Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017) (per curiam) (internal quotation omitted). "This requires more than mere notice pleading." *Toth*, 557 S.W.3d at 149 (internal quotation omitted).

11

The Texas Supreme Court has rejected the idea that the TCPA establishes a heightened evidentiary standard. *In re Lipsky*, 460 S.W.3d at 591. Rather, the prima facie standard is defined as "the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *Id*. at 590 (internal quotation omitted). A prima facie case may be shown through circumstantial evidence, but "conclusory statements are not probative evidence and accordingly will not suffice to establish a prima facie case." *O'Hern*, 579 S.W.3d at 604.

## C.     Defamation

Defamation is generally defined as "the invasion of a person's interest in her reputation and good name." *Hancock v. Variyam*, 400 S.W.3d 59, 63 (Tex. 2013). The elements for a prima facie case of defamation are:  (1) the defendant published a false statement; (2) that defamed the plaintiff; (3) with the requisite degree of fault regarding the truth of the statement (negligence if the plaintiff is a private individual); and (4) damages, in some cases. *Bedford*, 520 S.W.3d at 904; *Rodriguez*, 566 S.W.3d at 851. A plaintiff's evidence is sufficient to sustain a defamation claim if the evidence "establishes the facts of when, where, and what was said, the defamatory nature of the statements, and how they damaged the plaintiff." *In re Lipsky*, 460 S.W.3d at 591.

### 1.     Publication of a False Statement

With respect to the first element, a publication is false if it is not substantially true. *Rodriguez*, 566 S.W.3d at 851. "A publication is not substantially true if, taken as a whole, it is more damaging to the plaintiff's reputation than a truthful publication would have been." *Id*. A statement is "published" when it is communicated to a third person who is capable of understanding its defamatory meaning in such a way that the person did understand its defamatory meaning. *Thomas-Smith v. Mackin*, 238 S.W.3d 503, 507 (Tex. App.—Houston [14th Dist.]

12

2007, no pet.).

According to the affidavit of Jessica Vail, a former Hunton employee, she attended a meeting with Tyler and other Hunton employees on May 14, 2018. Vail's affidavit states that, during the meeting, Tyler said that Blaschke was "let go" and "terminated" because she had a relationship with a customer and "lied about it."[4]

In her affidavit, Blaschke asserts that these statements were false. Blaschke said she met with Tyler approximately four months before the May 14 meeting and was forthcoming about her relationship with a customer. Blaschke also stated that her departure from Hunton did not stem from her relationship with a customer — instead, Blaschke said she resigned from Hunton pursuant to the parties' severance agreement. This evidence satisfies Blaschke's evidentiary burden with respect to the first element of her defamation claim.

## 2. Defamatory Regarding Blaschke

A statement is defamatory if it tends to injure a person's reputation or impeach a person's honesty, integrity, or virtue. *Backes v. Misko*, 486 S.W.3d 7, 24 (Tex. App.—Dallas 2015, pet. denied); *Cecil v. Frost*, 14 S.W.3d 414, 417 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Whether a statement is defamatory is a question of law for the court. *Cecil*, 14 S.W.3d at 417. For this determination, we construe the statement as whole in light of surrounding circumstances based on how a reasonable person would perceive the entire statement. *In re Lipsky*, 460 S.W.3d at

---

[4] These allegations regarding Tyler's statements at the May 14 meeting also were asserted in Blaschke's affidavit. Blaschke said she learned of the statements "from speaking with Hunton employees." Citing the Texas Rules of Evidence, Hunton asserts Blaschke's statements on this point constitute hearsay. Because these allegations also were attested to in Vail's affidavit (and un-objected to by Hunton), we do not address Hunton's hearsay objection to Blaschke's affidavit. *See Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 907 (Tex. 2004) (error in the admission of evidence generally is deemed harmless if the objecting party subsequently permits the same or similar evidence to be introduced without objection).

13

594; *Cecil*, 14 S.W.3d at 417.

The statements at issue asserted that Blaschke was fired because she lied about having an affair with a customer. A reasonable person could conclude these statements would tend to injure a person's reputation or impeach a person's honesty, integrity, or virtue. Therefore, Blaschke's evidence satisfies her burden with respect to this element of her defamation claim.

### 3. Requisite Degree of Fault

Because Blaschke is a private individual, she must show the defamatory statements were negligently published. *See Bedford*, 520 S.W.3d at 904; *Rodriguez*, 566 S.W.3d at 851. "'Negligence' is established upon a showing the publisher knew or should have known that the defamatory statement was false." *Ford v. Bland*, No. 14-15-00828-CV, 2016 WL 7323309, at *3 (Tex. App.—Houston [14th Dist.] Dec. 15, 2016, no pet.) (mem. op.).

Blaschke's affidavit makes this showing. Blaschke asserts that, several months before the May 14 meeting, she was questioned by Tyler regarding her relationship with a Hunton customer. Blaschke attested that she was forthcoming about the relationship and did not lie about it to Tyler.

Referencing the parties' severance agreement, Blaschke also states in her affidavit that she "agreed to resign" from Hunton "as part of an amicable resolution" of her discrimination claims. The severance agreement was attached to Blaschke's affidavit; the agreement specifically prohibits Tyler (and certain other Hunton employees) from "mak[ing] disparaging comments concerning" Blaschke. If Tyler was bound by the terms of the severance agreement, then presumably he also would have known that Blaschke's departure from Hunton was effected pursuant to the agreement (rather than as a result of an alleged lie). Therefore, this evidence makes

14

a prima facie case that Tyler knew or should have known that the alleged defamatory statements were false.

### 4. Damages

Defamation claims are delineated into defamation *per se* and *per quod*. *Hancock*, 400 S.W.3d at 63-64. Defamation *per se* refers to statements that are so obviously harmful that general damages are presumed to flow from the nature of the defamation itself. *In re Lipsky*, 460 S.W.3d at 593; *Exxon Mobil Corp. v. Hines*, 252 S.W.3d 496, 501 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). Special damages are never presumed because they represent specific economic losses that must be proven. *In re Lipsky*, 460 S.W.3d at 593. For defamation *per quod*, a plaintiff must carry the burden of proof on both the existence and amount of damages. *Hancock*, 400 S.W.3d at 63; *Exxon Mobil Corp.*, 252 S.W.3d at 501. Before a plaintiff can recover general damages in an action for defamation *per quod*, the plaintiff first must prove special damages. *See Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 626 (Tex. 2018).

Here, neither party addresses whether Blaschke's claims are defamation *per se* or *per quod*. The parties instead focus on whether Blaschke's evidence establishes a prima facie case with respect to damages. Presuming (for these limited purposes) that the alleged statements constitute defamation *per quod*, we conclude Blaschke met her evidentiary burden with respect to general and special damages.

To establish a prima facie case, "[d]irect evidence of damages is not required, but the evidence must be sufficient to allow a rational inference that some damages naturally flowed from the defendant's conduct." *S&S Emergency Training Sols., Inc.*, 564 S.W.3d at 847. General damages compensate for non-economic losses, such as mental anguish or loss of reputation; special damages are economic damages such as a for lost income. *Hancock*, 400 S.W.3d at 65. Evidence that the plaintiff

15

has lost a job or business opportunity may show loss of reputation if it is connected to the defamatory statements at issue. *Anderson v. Durant*, 550 S.W.3d 605, 621 (Tex. 2018) (testimony from a prospective employer that he would not hire the plaintiff due to certain allegations regarding a kickback scheme constituted "more than a scintilla of evidence" that the allegations damaged the plaintiff's reputation). Once a loss has been established, the jury has discretion to estimate the amount that will reasonably compensate the plaintiff. *Id.*

Here, Ramirez's and Blaschke's affidavits satisfy Blaschke's evidentiary burden with respect to general and special damages. In his affidavit, Ramirez stated that he is the owner of S&R Services, which provides residential heating and air conditioning services. Ramirez asserted that he "was told by contractors . . . that Kelly Blaschke no longer worked at Hunton because she had an affair with a customer and lied about it and was fired." Continuing on, Ramirez stated:

> Also, in 2018, I received a call from Kelly Blaschke during which she wanted S&R Services to provide business to Ms. Blaschke and her employer, Goodman. Because of the information that Ms. Blaschke had an affair and lied about it and was fired, I specifically have chosen not to use Ms. Blaschke or Goodman for my company's needs and have chosen not to send her or Goodman any business. I would have sent at least $50,000 worth of business this year to her and to Goodman if I had not been told this information about her departure, including the affair and her lying about the affair and her being terminated.

In her affidavit, Blaschke stated that she had discussions "with the President of S&R Services in order to secure their business" but "S&R Services has declined to provide [her] with such business." Citing her compensation agreement, Blaschke stated that securing $50,000 worth of business would have entitled her to a percentage commission as well as a bonus.

This evidence permits the rational inference that some general and special

16

damages naturally flowed from Tyler's alleged statements, namely, lost income and injury to Blaschke's reputation. *See S&S Emergency Training Sols., Inc.*, 564 S.W.3d at 847. This evidence therefore satisfies Blaschke's evidentiary burden with respect to the damages element of her defamation claim. *See Anderson*, 550 S.W.3d at 621.

Arguing that Ramirez's affidavit lacks an appropriate foundation, Hunton asserts that Ramirez does not state "why he believes that such contractors at the supply house do business with Hunton, when the contractors allegedly learned of the information, [or] that the source of the information came from Hunton." We reject these evidentiary challenges. The TCPA does not impose a heightened evidentiary standard but instead requires only that the nonmoving party "provide enough detail to show the factual basis for its claim." *Bedford*, 520 S.W.3d at 904. Ramirez's affidavit satisfies this standard: Ramirez states where and from whom he heard the statements regarding Blaschke's departure from Hunton and how these statements impacted his decision against retaining Blaschke and Goodman Air Conditioning and Heating.

Likewise, Ramirez was not required to show that the contractors' source of the information came from Hunton — instead, the applicable standard requires only that the evidence create a "rational inference" that damages flowed from the allegedly defamatory statements. *S&S Emergency Training Sols., Inc.*, 564 S.W.3d at 847; *see also O'Hern*, 579 S.W.3d at 604 (a prima facie case may be shown through circumstantial evidence). Ramirez states that he was told Blaschke lied about having an affair with a customer and was fired — the same statements that, according to Vail's affidavit, Tyler made at the May 14 employee meeting. The statements' similarities support the rational inference that they came from the same source.

17

Hunton also asserts that Ramirez's affidavit "appears to be disingenuous" and references an assumed name certificate purportedly showing that Ramirez formed S&R Services on the same day the affidavit was executed. But neither this argument nor the assumed name certificate was brought to the trial court's attention. Therefore, Hunton did not preserve this issue for appellate review. *See* Tex. R. App. P. 33.1.

We conclude Blaschke satisfied her burden under the second step of the TCPA framework and brought forth clear and specific evidence establishing a prima facie case for each essential element of her defamation claim.

We overrule Hunton's third issue with respect to Blaschke's defamation claim.

## D.    Breach of Contract

To prevail on a breach of contract claim, the plaintiff must show:  (1) a valid contract existed between the plaintiff and the defendant; (2) the plaintiff tendered performance or was excused from doing so; (3) the defendant breached the terms of the contract; and (4) the plaintiff sustained damages as a result of the defendant's breach. *S&S Emergency Training Sols., Inc.*, 564 S.W.3d at 847; *Toth*, 557 S.W.3d at 157.

### 1.    Valid Contract

To prove the existence of a valid contract, the plaintiff must show:  (1) an offer was made; (2) the other party accepted in strict compliance with the offer's terms; (3) the parties had a meeting of the minds on the contract's essential terms; (4) each party consented to those terms; and (5) the parties executed and delivered the contract with the intent that it be mutual and binding. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018); *Arshad v. Am. Express Bank,*

18

*FSB*, 580 S.W.3d 798, 804 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

Here, Blaschke included with her affidavit a copy of the parties' severance agreement. This evidence satisfies Blaschke's evidentiary burden with respect to the first element of her breach of contract claim.

### 2. Tendered Performance

In her affidavit, Blaschke stated that she has "fully complied with the Severance Agreement and ha[s] not disparaged Hunton." This constitutes clear and specific evidence that Blaschke tendered performance under the severance agreement.

### 3. Breach

Under the heading entitled "Non-Disparagement and Confidentiality," the severance agreement states, in relevant part:

> [Hunton] agrees its executive leadership team and Robert Tyler and Steve Acker will be instructed not to and will not make disparaging comments concerning [Blaschke].

*Black's Law Dictionary* provides two definitions for "disparage": (1) "[t]o speak slightingly of; to criticize (someone or something) in a way showing that one considers the subject of discussion neither good nor important"; and (2) "[t]o degrade in estimation by disrespectful or sneering treatment." *Black's Law Dictionary* (11th ed. 2019); *see also Shannon v. Mem'l Drive Presbyterian Church U.S.*, 476 S.W.3d 612, 629 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (interpreting contract's non-disparagement clause, the court applied the "plain meaning" of "disparage").

In her affidavit, Vail stated that Tyler said that Blaschke was "let go" and "terminated" because she had a relationship with a customer and "lied about it."

19

These statements fall within the definitions of "disparage" and constitute prima facie evidence that Tyler's statements constitute a breach of the severance agreement. *See, e.g., Shannon*, 476 S.W.3d at 618-19, 628-30 (church's statements insinuating that plaintiff left church's employment for negative reasons gave rise to fact issue regarding whether church breached contract's non-disparagement clause).

### 4. Damages

The goal in measuring damages for a breach of contract claim is to provide just compensation for any loss or damage actually sustained as a result of the breach. *FPL Energy, LLC v. TXU Portfolio Mgmt. Co.*, 426 S.W.3d 59, 69 (Tex. 2014); *Mays v. Pierce*, 203 S.W.3d 564, 577 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). The normal measure of damages in a contract case is the expectancy or the benefit of the bargain measure, which seeks to restore the plaintiff to the economic position it would have occupied had the contract been performed. *See Quigley v. Bennett*, 227 S.W.3d 51, 56 (Tex. 2007) (Brister, J., concurring in part and dissenting in part); *Parkway Dental Assocs., P.A. v. Ho & Huang Props., L.P.*, 391 S.W.3d 596, 607 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Another measure is the reliance measure, the purpose of which is to put the plaintiff in as good an economic position as it would have occupied had the contract not been made. *Quigley*, 227 S.W.3d at 56; *Parkway Dental Assocs., P.A.*, 391 S.W.3d at 607.

To support the damages element of her breach of contract claim, Blaschke points to the statements in her affidavit attesting that she "lost commissions from her current employer as a direct result of the disparaging statements which were made." Specifically, this portion of Blaschke's affidavit states:

> Subsequent to my resignation from Hunton, I have accepted a sales position with Goodman Air Conditioning and Heating. Based on my compensation agreement at Goodman, if I were to bring in $50,000 worth of business this year from a particular customer, I would be paid

> a percentage commission on such an amount, together with a bonus. I had discussions this year while working at Goodman with the President of S&R Services in order to secure their business. S&R Services has declined to provide me with such business.

As previously discussed, in his affidavit Ramirez (the owner of S&R Services) stated that he would have sent at least $50,000 worth of business to Blaschke and Goodman Air Conditioning and Heating had he not been told Blaschke was terminated from Hunton after lying about having an affair with a customer. These affidavits, considered together, make a prima facie showing that Blaschke suffered damages in the form of a lost commission and bonus.

Challenging Blaschke's affidavit, Hunton asserts her statements cannot be considered evidence of damages because Blaschke failed to include with her affidavit the "compensation agreement" she references.[5] Hunton cites the best evidence rule to support its argument. *See* Tex. R. Evid. 1002 ("An original writing, recording, or photograph is required in order to prove its content unless the rules or other law provides otherwise.").

But Hunton does not cite any case law or other authority to support the application of this evidentiary rule to a prima facie case in the context of a TCPA motion to dismiss. With respect to evidence, the TCPA states that, "[i]n determining whether a legal action should be dismissed under this chapter, the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." Act of May 21, 2011, 82d Leg., R.S., ch. 341, 2011 Tex. Gen. Laws 961, 963 (amended 2019). The TCPA does not mandate that the affidavits (1) comply with the Texas Rules of Evidence, (2) comply with the best evidence rule, or (3) include any supporting evidence of any kind. *See id.* We

---

[5] Hunton raised this objection in the trial court and received a ruling, thereby preserving the issue for appellate review. *See* Tex. R. App. P. 33.1.

reject Hunton's argument that the plain language of the TCPA imposes any requirement beyond affidavits establishing clear and specific evidence of a prima facie case.

We conclude Blaschke satisfied her burden under the second step of the TCPA framework and brought forth clear and specific evidence establishing a prima facie case for each essential element of her breach of contract claim.

We overrule Hunton's third issue with respect to Blaschke's breach of contract claim.

## IV.    Qualified Privilege

Next, we address Hunton's contention that, even if Blaschke met her TCPA evidentiary burden, the trial court erred by denying the motion to dismiss because Hunton established the affirmative defense of qualified privilege by a preponderance of the evidence.  *See* Act of May 21, 2011, 82d Leg., R.S., ch. 341, 2011 Tex. Gen. Laws 961, 963 (amended 2019) ("the court shall dismiss a legal action against the moving party if the moving party establishes an affirmative defense or other grounds on which the moving party is entitled to judgment as a matter of law").

A qualified privilege is an affirmative defense to a defamation claim and attaches to a communication that is "made in good faith and the author, the recipient or a third person, or one of their family members, has an interest that is sufficiently affected by the communication." *Burbage v. Burbage*, 447 S.W.3d 249, 254 (Tex. 2014).  Qualified privilege is an affirmative defense that the defendant has the burden to prove unless the plaintiff's petition affirmatively establishes the applicability of the privilege.  *Id.*  If the defendant establishes that the privilege applies, then "the burden shifts to the plaintiff to prove that the defendant made the statements with actual malice." *Id.*; *see also Steinhaus v. Beachside Envtl., LLC*,

No. 14-18-01048-CV, 2019 WL 6317686, at *4 (Tex. App.—Houston [14th Dist.] Nov. 26, 2019, pet. filed).

Actual malice means "'the making of a statement with knowledge that it is false, or with reckless disregard of whether it is true.'" *Burbage*, 447 S.W.3d at 254 (quoting *Hagler v. Proctor & Gamble Mfg. Co.*, 884 S.W.2d 771, 772 (Tex. 1994) (per curiam)). Reckless disregard is a subjective standard requiring evidence that the defendant "entertained serious doubts as to the truth" of the statement. *Huckabee v. Time Warner Entm't Co.*, 19 S.W.3d 413, 420 (Tex. 2000) (internal quotation omitted).

Here, we presume without deciding that the qualified privilege applies to the statements at issue and conclude Blaschke met her burden via clear and specific evidence showing the statements were made with actual malice.

Blaschke's defamation claim asserts Tyler falsely stated that (1) Blaschke lied about her relationship with a customer and (2) Blaschke was fired from her position because she lied. Asserting Blaschke cannot show these alleged statements were made with actual malice, Hunton relies on the portions of Tyler's deposition where he stated that (1) he "belie[ved] that [Blaschke] was not forthcoming about that relationship" with a Hunton customer and (2) he told the sales team at the May 14 meeting that Blaschke "decided to leave [Hunton] of her own volition." But Tyler's testimony on these points are directly contradicted by Blaschke's prima facie evidence — Blaschke's affidavit states she was forthcoming about the relationship and Vail's affidavit states Tyler told the sales team at the May 14 meeting that Blaschke had been fired. Because of this conflicting evidence, we cannot conclude Hunton established its qualified privilege affirmative defense by a preponderance of the evidence. *See* Act of May 21, 2011, 82d Leg., R.S., ch. 341, 2011 Tex. Gen. Laws 961, 963 (amended 2019); *see also Tex. Jewelers Assoc. v. Glynn*, No. 03-17-

23

00771-CV, 2018 WL 5305721, at \*5-6 (Tex. App.—Austin Oct. 26, 2018, no pet.) (mem. op.); and *Ford*, 2016 WL 7323309, at \*5.

We overrule Hunton's fourth issue.

## V.　Nonsuit

In its final issue, Hunton asserts the trial court erred when it denied its motion to dismiss Blaschke's previously dismissed IIED claim. Blaschke voluntarily dismissed her IIED claim by filing her amended petition, which was filed after Hunton's motion to dismiss.

"A plaintiff has an absolute right to nonsuit a claim before resting its case-in-chief, but a nonsuit 'shall not prejudice the right of an adverse party to be heard on a pending claim for affirmative relief.'" *CTL/Thompson Tex., LLC v. Starwood Homeowner's Ass'n, Inc.*, 390 S.W.3d 299, 300 (Tex. 2013) (per curiam) (quoting Tex. R. Civ. P. 162). A motion to dismiss that affords more relief than a nonsuit constitutes a claim for affirmative relief that survives nonsuit. *Abatecola*, 2018 WL 3118601, at \*14 (citing *Rauhauser v. McGibney*, 508 S.W.3d 377, 381 (Tex. App.—Fort Worth 2014, no pet.) (per curiam), *overruled on other grounds by Hersh*, 526 S.W.3d at 467).

TCPA motions to dismiss generally survive nonsuit because they may allow the movant to obtain a dismissal with prejudice, attorney's fees, and sanctions. *Id.*; *see also McDonald Oilfield Operations, LLC v. 3B Inspection, LLC*, 582 S.W.3d 732, 752 (Tex. App.—Houston [1st Dist.] 2019, no pet.); *Craig v. Tejas Promotions, LLC*, 550 S.W.3d 287, 296-97 (Tex. App.—Austin 2018, pet. denied); *Walker v. Hartman*, 516 S.W.3d 71, 80 (Tex. App.—Beaumont 2017, pet. denied). Specifically, the TCPA provides that the trial court "***shall***" dismiss a legal action if (1) that action is based on or is in response to the moving party's exercise of its rights

of free speech, petition, or association, and (2) the nonmoving party fails to establish a prima facie case for each element of its claim. Act of May 21, 2011, 82d Leg., R.S., ch. 341, 2011 Tex. Gen. Laws 961, 963 (amended 2019) (emphasis added). If the trial court orders a dismissal of a legal action under the TCPA, it "***shall award***" the moving party (1) court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action, and (2) sanctions against the party that brought the legal action. *Id*. (emphasis added).

Although the dismissal of one or more (but not all) claims for relief in a petition is not generally considered a nonsuit under Tex. R. Civ. P. 162 (*see C/S Sols., Inc. v. Energy Maint. Servs. Grp. LLC*, 274 S.W.3d 299, 305-06 (Tex. App.— Houston [1st Dist.] 2008, no pet.)), for the purposes of awarding attorneys' fees under the TCPA, Blaschke's dismissal of her IIED claim would normally be subject to the same analysis as set forth in the cases above regarding nonsuit. Here, however, although the IIED claim was premised on the same allegations as her defamation and breach of contract claims, it is not subject to the TCPA analysis. The trial court explicitly concluded Blaschke's "nonsuit" of the IIED claim "was not in response to" Hunton's motion. We agree.

IIED is a "gap-filler" tort; therefore, the party asserting it must also establish that there are no alternative causes of action that would provide a remedy for the severe emotional distress caused by the defendant's conduct. *Kroger Tex. L.P. v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006); *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005); *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004). If there is an independent set of facts that would support an IIED claim, then the claim is not barred. *See Hoffmann-La Roche Inc.*, 144 S.W.3d at 450. If the essence of the plaintiff's IIED claim is another tort, however, the plaintiff may not maintain the action (regardless of whether the plaintiff chooses to assert the

25

alternative claim, the plaintiff succeeds on the alternative claim, or the claim is barred). *Id*. at 447-48.

In this case, Hunton conceded that, "the factual allegations in [plaintiff's] Petition sound in defamation and, therefore, cannot be raised in an IIED claim." This admission that the IIED claim was not viable in conjunction with an already alleged proper cause of action eliminated the theoretical viability of Blaschke's IIED claim and effectively transformed a potential claim into a frivolous one. Blaschke's dismissal of her IIED claim after learning Hunton conceded her claims sounded in defamation serves the express purpose of Texas Rule of Civil Procedure 1 and does not support Hunton's claim under the TCPA.[6] Blaschke's defamation claim survived Hunton's motion to dismiss and therefore the dismissal of her IIED claim could not have been related to Hunton's motion to dismiss.

We overrule Hunton's fifth issue.

## CONCLUSION

We affirm the trial court's judgment.


/s/      Meagan Hassan
         Justice


Panel consists of Justices Zimmerer, Spain, and Hassan.

---

[6] "The proper objective of rules of civil procedure is to obtain a just, fair, equitable and impartial adjudication of the rights of litigants under established principles of substantive law. To the end that this objective maybe attained with as great expedition and dispatch and at the least expense both to the litigants and to the state as maybe practicable, these rules shall be given a liberal construction." Tex. R. Civ. P. 1.